# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>LIVE WELL FINANCIAL, INC.,<br><br>     Debtor. | Chapter 7<br><br>Case No. 19-11317 (LSS) |
| DAVID W. CARICKHOFF, as Chapter 7<br>Trustee of LIVE WELL FINANCIAL, INC.,<br><br>     Plaintiff,<br><br>v.<br><br>STUART H. CANTOR, JAMES P. KARIDES,<br>BRETT J. ROME, LWFVEST, LLC, NORTH HILL<br>VENTURES II, LP, FIVE ELMS EQUITY FUND I,<br>L.P., FIVE ELMS HAAKON, L.P., FIVE ELMS<br>COINVEST, L.P., JAMES BROWN, GANTCHER<br>FAMILY LIMITED PARTNERSHIP, ERIC<br>LEGOFF, and TITLE WORKS OF VIRGINIA, INC.,<br>and JOHN DOES 1–10,<br><br>     Defendants. | Adv. Pro No. 21-50990 (LSS) |

## MEMORANDUM OF LAW IN SUPPORT OF STUART H. CANTOR'S MOTION TO DISMISS COMPLAINT

Dated: September 9, 2021
Wilmington, Delaware

Robert J. Stearn, Jr. (No. 2915)
Cory D. Kandestin (No. 5025)
J. Zachary Noble (No. 6689)
**RICHARDS, LAYTON & FINGER, P.A.**
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
stearn@rlf.com
kandestin@rlf.com
noble@rlf.com

-and-

Dion W. Hayes (*pro hac vice* to be filed)
Joseph S. Sheerin (*pro hac vice* to be filed)
**McGUIREWOODS LLP**
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
Telephone: (804) 775-1000
dhayes@mcguirewoods.com
jsheerin@mcguirewoods.com

*Counsel to Stuart H. Cantor*

# <u>TABLE OF CONTENTS</u>

**Page**

I. PRELIMINARY STATEMENT ............................................................... 1

II. FACTUAL BACKGROUND ............................................................... 3

III. ARGUMENT ............................................................................. 3

    A. The Court Should Dismiss Count 2 of the Complaint Because Plaintiff Fails to State a Claim for Breach of Fiduciary Duty Against Defendant. ............ 4

        1. Plaintiff Has Failed to Allege Facts Sufficient to Establish a Breach of Fiduciary Duty Claim. ............................................................... 5

            a. Legal Standard for Breach of Fiduciary Duty ............................... 5

            b. Plaintiff's Allegations in the Complaint Fail to Satisfy the Legal Standard for a Claim of Breach of Fiduciary Duty ............. 8

                i. Actions related to approval of the bond investment program ............................................................... 8

                ii. Actions related to approval of the stock repurchase ........ 11

                iii. Actions related to approval of Hild's compensation ........ 14

        2. Plaintiff's Allegations in the Complaint Are Barred by Statute of Limitations. ............................................................... 15

    B. The Court Should Dismiss Count 3 of the Complaint Because Plaintiff Fails to State a Claim for Unlawful Stock Repurchase under 8 Del. C. § 174 Against Defendant. ............................................................... 17

        1. Plaintiff Has Failed to Allege Facts Sufficient to Establish Live Well's Alleged Insolvency at the Time of the Stock Repurchase. .......... 18

        2. Plaintiff Has Failed to Allege Facts Sufficient to Establish Defendant's Alleged Awareness of Any Impairment. ............................ 19

    C. The Court Should Dismiss Count 7 of the Complaint Because Plaintiff Fails to State a Claim for the Avoidance and Recovery of Constructive Fraudulent Transfers Against Defendant. ............................................................... 21

        1. Plaintiff Has Failed to Allege Facts Sufficient to Establish that Live Well Received the Required Lack of Value in Exchange for Each Director Fee. ............................................................... 22

        2. Plaintiff Has Failed to Allege Facts Sufficient to Establish Live Well's Financial Condition at the Time of Each Director Fee. ............. 24

    D. The Court Should Dismiss Count 8 of the Complaint Because Plaintiff Fails to State a Claim for the Avoidance and Recovery of Intentionally Fraudulent Transfers Against Defendant. ............................................................... 25

IV. CONCLUSION ............................................................... 29

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*A&J Cap., Inc. v. L. Off. of Krug*,
  No. 2018-0240-JRS, 2019 Del. Ch. LEXIS 37 (Ch. Jan. 29, 2019) ........................................6

*Albert v. Alex. Brown Mgmt. Servs.*,
  No. CV.A. 762-N, 2005 Del. Ch. LEXIS 100 (Ch. June 29, 2005)........................................15

*In re AMC Invs., LLC*,
  524 B.R. 62 (Bankr. D. Del. 2015) ........................................................................................15

*Aronson v. Lewis*,
  473 A.2d 805 (Del. 1984) .........................................................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................4, 12, 19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................................................4

*In re Bridgeport Holdings, Inc.*,
  388 B.R. 548 (Bankr. D. Del. 2008) ...................................................................................5, 15

*C-T of Virginia, Inc. v. Euroshoe Assocs. Ltd. P'ship*,
  No. 91-1579, 1992 U.S. App. LEXIS 1029 (4th Cir. Jan. 29, 1992).....................................23

*Cede & Co. v. Technicolor, Inc.*,
  634 A.2d 345 (Del. 1993) ....................................................................................................6, 16

*Chen v. Howard-Anderson*,
  87 A.3d 648 (Del. Ch. 2014)...................................................................................................10

*Continuing Creditors' Comm. of Star Telecomms., Inc. v. Edgecomb*,
  385 F. Supp. 2d 449 (D. Del. 2004)......................................................................................4, 6

*ECB USA, Inc. v. Savencia, S.A.*,
  No. CV 19-731-RGA-CJB, 2020 U.S. Dist. LEXIS 163079 (D. Del. July 10,
  2020) .......................................................................................................................................16

*In re Fedders N. Am., Inc.*,
  405 B.R. 527 (Bankr. D. Del. 2009) .....................................................................................6, 8

*In re Foothills Tex., Inc.*,
  476 B.R. 143 (Bankr. D. Del. 2012) .......................................................................................10

*Fox Rest Assocs., L.P. v. Little*,
    282 Va. 277, 285, 717 S.E.2d 126 (2011)……………………………………………………27

*Gottlieb v. Thatcher*,
    151 U.S. 271 (1894)..........................................................................................28

*Grayson v. Westwood Bldgs. L.P.*,
    859 S.E.2d 651 (Va. 2021)................................................................................28

*Jalbert v. Flanagan (In re F-Squared Inv. Mgmt., LLC)*,
    600 B.R. 294 (Bankr. D. Del. 2019) ...........................................................22, 23

*Jalbert v. Souza (In re F-Squared Inv. Mgmt., LLC)*,
    2019 Bankr. LEXIS 2817 (Bankr. D. Del. 2019) .....................................18, 24, 25

*Kanter v. Barella*,
    489 F.3d 170 (3d Cir. 2007)...............................................................................13

*In re KKR Fin. Holdings LLC S'holder Litig.*,
    101 A.3d 980 (Del. Ch. 2014)...............................................................................7

*Klang v. Smith's Food & Drug Ctrs., Inc.*,
    702 A.2d 150 (Del. 1997) ...................................................................................17

*In re LSC Wind Down, LLC*,
    610 B.R. 779 (Bankr. D. Del. 2020) ...................................................................19

*In re Meyer*,
    244 F.3d 352 (4th Cir. 2001) .............................................................................23

*In re Midway Games Inc.*,
    428 B.R. 303 (Bankr. D. Del. 2010) .....................................................................8

*Miller v. Bradley (In re W.J. Bradley Mortgage Capital, LLC)*,
    598 B.R. 150 (Bankr. D. Del. 2019) ...................................................................27

*Off. Comm. of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins*,
    No. CV 20228-NC, 2004 Del. Ch. LEXIS 122 (Ch. Aug. 24, 2004) ...............13, 14

*Orman v. Cullman*,
    794 A.2d 5 (Del. Ch. 2002).............................................................6, 7, 11, 12, 13

*Pension Ben. Guar. Corp. v. White Consol. Indus.*,
    998 F.2d 1192 (3d Cir. 1993)..............................................................................10

*Quadrant Structured Prods. Co., LTD. v. Vertin*,
    115 A.3d 535 (Del. Ch. 2015)..............................................................................17

*RCS Creditor Tr. v. Schorsch*,
No. CV 2017-0178-SG, 2017 Del. Ch. LEXIS 820 (Ch. Nov. 30, 2017) ..............................12

*RCS Creditor Tr. v. Schorsch*,
No. CV 2017-0178-SG, 2018 Del. Ch. LEXIS 113 (Ch. Apr. 5, 2018)....................................7

*In re Sols. Liquidation LLC*,
608 B.R. 384 (Bankr. D. Del. 2019) .........................................................................................6

*Stone v. Ritter*,
911 A.2d 362 (Del. 2006) ..........................................................................................................8

*SV Inv. Partners, LLC v. ThoughtWorks, Inc.*,
7 A.3d 973 (Del. Ch. 2010)......................................................................................................17

*Telxon Corp. v. Meyerson*,
802 A.2d 257 (Del. 2002) ....................................................................................................7, 13

*In re Tower Air, Inc.*,
416 F.3d 229 (3d Cir. 2005)........................................................................................................6

*In re Trados Inc. S'holder Litig.*,
No. CV 1512-CC, 2009 Del. Ch. LEXIS 128 (Ch. July 24, 2009)...........................................7

*In re Trib. Co. Fraudulent Conv. Litig.*,
No. 11-MD-2296 (RJS), 2018 U.S. Dist. LEXIS 204632 (S.D.N.Y. Nov. 30,
2018) ........................................................................................................................................17

*In re Troll Commc'ns, LLC*,
385 B.R. 110 (Bankr. D. Del. 2008) ..........................................................................................6

*U.S. Bank Nat'l Ass'n v. Verizon Commc'ns Inc.*,
892 F. Supp. 2d 805 (N.D. Tex. 2012) ....................................................................................20

*In re Uni-Marts, LLC*,
404 B.R. 767 (Bankr. D. Del. 2009) ..........................................................................................5

*In re USDigital, Inc.*,
443 B.R. 22 (Bankr. D. Del. 2011) .............................................................................................6

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*,
860 A.2d 312 (Del. 2004) ........................................................................................................15

*In re Walt Disney Co. Derivative Litig.*,
906 A.2d 27 (Del. 2006) ............................................................................................................8

*In re Walt Disney Co. Derivative Litig.*,
907 A.2d 693 (Del. Ch. 2005)....................................................................................................5

*Yelverton v. Homes at Potomac Greens Assocs. Ltd. P'ship (In re Yelverton)*,
    No. 09-00414, 2010 Bankr. LEXIS 1339 (Bankr. D.D.C. Apr. 21, 2010) ............................24

**Statutes**

6 *Del. C.* § 1304 ............................................................................................................22, 26

6 *Del. C.* § 1304(b) ..................................................................................................................26

8 *Del. C.* § 141(e) ....................................................................................................................10

8 *Del. C.* § 154 .........................................................................................................................17

8 *Del. C.* § 160 ....................................................................................................................17, 21

8 *Del. C.* § 160(a)(1) ................................................................................................................17

8 *Del. C.* § 172 .........................................................................................................................20

8 *Del. C.* § 174 ................................................................................................2, 3, 17, 20, 21

8 *Del. C.* § 174(a) ...............................................................................................................17, 21

8 *Del. C.* §§ 174(a), 160(a)(1) ................................................................................................17

10 *Del. C.* § 8106 .....................................................................................................................15

11 U.S.C. § 108(a) ....................................................................................................................16

11 U.S.C. § 544 ....................................................................................................................21, 25

Va. Code Ann. § 55.1-400 ....................................................................................................26, 27

Va. Code Ann. § 55.1-401 .........................................................................................................22

**Other Authorities**

Federal Rule of Civil Procedure 9(b) .......................................................................................26

Federal Rule of Bankruptcy Procedure 7012(b) .........................................................................1

Federal Rule of Civil Procedure 12(b)(6) .......................................................................1, 3, 4, 5

Stuart H. Cantor (the "Defendant"), by and through his undersigned counsel, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to the above-captioned adversary proceeding pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, moves for an order dismissing the complaint filed by the captioned plaintiff (the "Plaintiff") against Defendant (the "Complaint") because the Complaint fails to state a claim upon which relief can be granted.[1]

## I.    PRELIMINARY STATEMENT

Live Well Financial, Inc. ("Live Well") collapsed in May 2019 under the weight of fraud in its bond investment program.  The fraud was perpetrated by a small group of individuals responsible for the day-to-day operations of the company who are not a party to this adversary proceeding.  These facts are evident from the criminal prosecution of these individuals, the related enforcement action by the SEC, and Plaintiff's own Complaint.  *See* Complaint, ¶¶ 3, 176.  Notwithstanding these facts, Plaintiff attempts to pin the fall of Live Well on Defendant. He does so primarily by mischaracterizing and casting aspersions on Defendant's efforts to play peacemaker in a dispute between a divided Board of Directors and management of the company, which is a dispute that is not related to the fraud.  *See Id.* at ¶ 124.  In contrast to these thinly-pled and conclusory allegations, Defendant acted in good faith at all times during his 15-year board service at Live Well and is not responsible for the criminal misdeeds of its executives.

As trustee of the bankruptcy estate of Live Well for the past two years, Plaintiff has been provided a full and fair opportunity to investigate all aspects of Live Well's financial affairs. After such investigation, Plaintiff in his Complaint readily admits the basic conclusion from every other investigation into Live Well's demise:

---

[1] Capitalized terms used but not defined herein shall have the meanings assigned to them in the Complaint.

> The fraud was indisputably perpetrated by certain former officers and employees of Live Well—principally, CEO and Chairman Michael C. Hild, CFO Eric G. Rohr, and Executive Vice President Charles Darren Stumberger (the "Criminal Insiders")—each of whom has either pleaded guilty to or has been found guilty of multiple counts of securities, wire, and bank fraud and conspiracy in connection with the fraud described herein.

*Id.* at ¶ 3.

Notwithstanding this admission, Plaintiff improperly attempts to blame Defendant for the fraud of others, largely by reference to Defendant's alleged receipt of approximately $1.4 million in director fees over the fifteen years that Defendant served on Live Well's Board of Directors. Implicitly recognizing that these fees played no role in Live Well's demise, Plaintiff instead resorts to conclusory mischaracterizations of Defendant's conduct, largely through scurrilous and misleading insinuations about Defendant's relationship to Michael Hild. *See Id.* at ¶ 15 ("Cantor and Hild looted over $25 million from the company"); *id*. at ¶ 127 (Hild's "lackey"); *id*. at ¶ 137 ("in Hild's pocket"); *id*. at ¶ 141 ("Hild's man on the inside"). These conclusions are not reasonable inferences that can be drawn from well-pled allegations and shed heat but no light on the claims Plaintiff attempts to plead against Defendant.

By this Motion, Defendant requests the Court to dismiss the Complaint in its entirety against Defendant because Plaintiff has failed to provide required factual allegations and legal support for the relief requested therein. As explained herein, the Court should dismiss Count 2 of the Complaint because Plaintiff fails to state a claim for breach of fiduciary duty against Defendant. Further, the Court should dismiss Count 3 of the Complaint because Plaintiff fails to state a claim against Defendant for unlawful stock repurchase under 8 *Del. C.* § 174. Finally, the Court should dismiss Counts 7 and 8 of the Complaint because Plaintiff fails to state a claim for

the avoidance and recovery of constructively and intentionally fraudulent transfers against Defendant, respectively.[2]

## II.    FACTUAL BACKGROUND

On June 10, 2019, three creditors filed an involuntary petition under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") against Live Well in this Court.  On July 1, 2019, the Court entered an order for relief commencing the above-captioned bankruptcy case.

On June 29, 2021, Plaintiff filed the Complaint asserting four counts against Defendant.  In Count 2, Plaintiff asserts that Defendant breached his fiduciary duties to Live Well while serving as a director of the company.  In Count 3, Plaintiff asserts that Defendant's approval of a stock repurchase by Live Well in 2016 constituted an unlawful stock repurchase in violation of 8 *Del. C.* § 174.  In Counts 7 and 8, Plaintiff seeks to avoid and recover eleven alleged transfers totaling approximately $1.4 million in director fees received by Defendant as constructive fraudulent transfers and intentional fraudulent transfers, respectively.   In this Complaint, Plaintiff states that Defendant was an outside director of Live Well from 2005 until mid-2019.  Complaint, ¶ 25.

## III.    ARGUMENT

Defendant moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), which provides for dismissal where a plaintiff fails to state a claim upon which relief can be granted.  The U.S. Supreme Court has repeatedly warned plaintiffs that the Federal Rules of Civil Procedure "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me

---

[2] In Counts 5 and 6 of the Complaint, Plaintiff seeks relief against unidentified defendants regarding the alleged avoidance of obligations under an alleged Separation and Release Agreement (the "Release") as a constructive and/or actual fraudulent transfer under Delaware and Virginia law, and for which the only substantive allegation in the statement of facts is that the Release "purports to waive and release all of Live Well's claims for any cause of action against the Preferred Stockholders ..."  Complaint, ¶ 151.  Per the Table of Contents to the Complaint, Defendant does not understand that relief is being requested against him.  However, if relief is being requested against him, Defendant incorporates by reference the arguments contained in Section III(C) and (D) herein.

accusation.    A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.    Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing, *inter alia*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and punctuation omitted)).    A Rule 12(b)(6) motion tests the sufficiency of the factual allegations in the plaintiff's complaint in accordance with the "facial plausibility" standard needed to overcome a motion to dismiss:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S., at 678 (internal citations and punctuation omitted).

Finally, the Supreme Court has described the "facial plausibility" standard as "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id*. at 679.  For the reasons stated below, the Court should dismiss the Complaint in its entirety.

**A.    The Court Should Dismiss Count 2 of the Complaint Because Plaintiff Fails to State a Claim for Breach of Fiduciary Duty Against Defendant.**

In Count 2 of the Complaint, Plaintiff alleges that Defendant breached the fiduciary duties of loyalty and care from September 2015 through the collapse of Live Well in 2019. However, to establish a claim for fiduciary breach, Plaintiff must overcome the business judgement rule.  *Continuing Creditors' Comm. of Star Telecomms., Inc. v. Edgecomb*, 385 F. Supp. 2d 449, 458 (D. Del. 2004) (noting that the import of the business judgment rule is that "in

the absence of facts showing self-dealing or improper motive, a . . . director is not legally responsible to the corporation for losses that may be suffered as a result of a decision that . . . [the] director[] authorized in good faith.").  Further, a fiduciary breach claim that is clearly barred by the statute of limitations cannot survive a motion to dismiss.  *See In re Uni-Marts, LLC*, 404 B.R. 767, 779 (Bankr. D. Del. 2009) (dismissal under Rule 12(b)(6) appropriate if noncompliance with the limitations period appears on the face of the complaint).

As explained below, the Court should dismiss Plaintiff's fiduciary breach claims both because (i) Plaintiff's well-pled factual allegations do not overcome the presumption of the business judgment rule and (ii) the statute of limitations has expired.

1.  <u>Plaintiff Has Failed to Allege Facts Sufficient to Establish a Breach of Fiduciary Duty Claim.</u>

Plaintiff alleges that a number of actions taken by Defendant violated the duty of care and/or the duty of loyalty.  In spite of the Complaint's lack of clarity as to which actions allegedly violate which fiduciary duty, even taking all well-pled allegations as true, they do not state a plausible claim for relief.  Indeed, Plaintiff's fiduciary duty claims against Defendant are premised on rhetoric, speculation and conclusions dressed up as purported facts, rather than well-pled facts.

a.  *Legal Standard for Breach of Fiduciary Duty*

The duty of care "requires that directors of a Delaware corporation both: (1) 'use that amount of care which ordinarily careful and prudent men would use in similar circumstances'; and (2) 'consider all material information reasonably available.'"  *In re Bridgeport Holdings, Inc.*, 388 B.R. 548, 568 (Bankr. D. Del. 2008) (quoting *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 749 (Del. Ch. 2005)).  Conversely, the duty of loyalty requires that "the best interest of the corporation and its shareholders takes precedence over any interest possessed by a

director . . . and not shared by the stockholders generally." *In re USDigital, Inc.*, 443 B.R. 22, 41 (Bankr. D. Del. 2011) (quoting *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993)).

When alleging a breach of fiduciary duty, "the Trustee must 'plead around the business judgment rule'" to survive a motion to dismiss. *In re Troll Commc'ns, LLC*, 385 B.R. 110, 118 (Bankr. D. Del. 2008) (quoting *In re Tower Air, Inc.,* 416 F.3d 229, 238 (3d Cir. 2005)). This requires a plaintiff to "allege facts that 'raise a reasonable inference that the board of directors either breached its duty of loyalty or duty of care with regard to the transaction at issue.'" *In re Sols. Liquidation LLC*, 608 B.R. 384, 402 (Bankr. D. Del. 2019).

To establish a breach of the duty of care, a plaintiff must make "a showing of gross negligence." *In re Fedders N. Am., Inc.*, 405 B.R. 527, 539 (Bankr. D. Del. 2009). "[T]he Delaware Supreme Court has defined gross negligence as a 'higher level of negligence representing an extreme departure from the ordinary standard of care.'" *Sols. Liquidation*, 608 B.R. at 398 (quoting *A&J Cap., Inc. v. L. Off. of Krug*, No. 2018-0240-JRS, 2019 Del. Ch. LEXIS 37, at *27 (Ch. Jan. 29, 2019)). A plaintiff establishes gross negligence by pleading "that the defendant was 'recklessly uninformed' or acted 'outside the bounds of reason.'" *Sols. Liquidation*, 608 B.R. at 398 (quoting *A&J Cap.* 2019 Del. Ch. LEXIS 37, at *27).

Overcoming the business judgment presumption that a director acted loyally generally requires alleging facts that, if accepted as true, establish that a director "was either interested in the outcome of the transaction or lacked the independence to consider objectively whether the transaction was in the best interest of its company and all of its shareholders." *Orman v. Cullman*, 794 A.2d 5, 22 (Del. Ch. 2002). "To show that a director was interested, it is usually necessary to show that the director was on both sides of a transaction or received a benefit not received by the shareholders." *Troll Commc'ns*, 385 B.R. at 119 (quoting *Edgecomb*, 385 F.

Supp. 2d at 460).  Importantly, however, "if the fiduciary does not stand on both sides of the challenged transaction, a plaintiff seeking to rebut the business judgment rule must plead that any non-pro rata benefit the fiduciary received was *material* to her."  *RCS Creditor Tr. v. Schorsch*, No. CV 2017-0178-SG, 2018 Del. Ch. LEXIS 113, at *7 (Ch. Apr. 5, 2018) (emphasis added).

Directorial "'independence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences' . . . [s]uch [as] . . . when the challenged director is controlled by another."  *Orman*, 794 A.2d at 24 (quoting *Aronson v. Lewis*, 473 A.2d 805, 816 (Del. 1984)).  A director is controlled by another when he "is dominated by another party, whether through close personal or familial relationship or through force of will."  *Telxon Corp. v. Meyerson*, 802 A.2d 257, 264 (Del. 2002) (citing *Orman*, 794 A.2d at 25 n.50).  Further,

> [a] director may also be deemed "controlled" if he or she is beholden to the allegedly controlling entity, as when the entity has the direct or indirect unilateral power to decide whether the director continues to receive a benefit upon which the director is so dependent or is of such subjective material importance that its threatened loss might create a reason to question whether the director is able to consider the corporate merits of the challenged transaction objectively.

*Id*.  Importantly, however, "[t]he shorthand shibboleth of 'dominated and controlled directors' is insufficient."  *Orman*, 794 A.2d at 24 (quoting *Aronson*, 473 A.2d at 816).  The plaintiff bears the burden of establishing that a director lacks independence "by pleading facts that support a reasonable inference that the director is beholden to a controlling person or 'so under their influence that their discretion would be sterilized.'"  *In re KKR Fin. Holdings LLC S'holder Litig.*, 101 A.3d 980, 995 (Del. Ch. 2014) (quoting *In re Trados Inc. S'holder Litig.*, No. CV 1512-CC, 2009 Del. Ch. LEXIS 128, at *6 (Ch. July 24, 2009)).

The duty of loyalty includes, as a subsidiary element, the duty to act in good faith. *Fedders N. Am.*, 405 B.R. at 540 (citing *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006)).  To establish a breach of the duty of good faith, a plaintiff must "demonstrate one of three actions: '1) where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation; 2) where the fiduciary acts with the intent to violate applicable positive law; or 3) where the fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties.'" *In re Midway Games Inc.*, 428 B.R. 303, 318 (Bankr. D. Del. 2010) (quoting *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 67 (Del. 2006)).

> b. *Plaintiff's Allegations in the Complaint Fail to Satisfy the Legal Standard for a Claim of Breach of Fiduciary Duty.*

In the Complaint, Plaintiff cites a number of actions that allegedly constitute breaches of Defendant's fiduciary duties, including his role in approval of the bond investment program, the repurchase of stock from the Preferred Stockholders, and payment of compensation to Hild. However, as explained below, Plaintiff has failed to allege sufficient facts to overcome the presumption of the business judgment rule.

> i. *Actions related to approval of the bond investment program*

The Complaint is unclear as to how Live Well's directors, including Defendant, allegedly breached their fiduciary duty with respect to approval of the bond trading business.  Absent from the Complaint is any allegation that the directors stood on both sides of the issue, obtained a benefit not shared equally by all stockholders, or failed to make an informed decision about the issue.  To the contrary, Plaintiff's allegations establish that the directors received information about the proposed bond trading business, engaged with the issue by asking numerous questions,

and granted approval only after giving the issue reasonable consideration. *See* Complaint, ¶¶ 63–65, 87–89.

The entirety of Plaintiff's position appears to stem from the assertion that the directors "knew, or were willfully blind in not knowing" of the fraud perpetrated by the Criminal Insiders and the risks that it posed to Live Well. *Id.* at ¶¶ 104, 107. Yet, Plaintiff does not plead any facts that raise a reasonable inference that the directors were aware of the fraud or acted in bad faith with respect to the bond investment program. Tellingly, the specific "red flags" Plaintiff alleges were ignored by Defendant with respect to the bond investment program relate to business risks surrounding repo financing, not the alleged fraud. *Id.* at ¶¶ 76–80. Instead, with the benefit of the Criminal Insiders' fraud laid bare by government investigators, Plaintiff makes generic assertions about the mechanics of the investment program, the success of the bond portfolio, and the directors' financial expertise to prop up the conclusory assessment that the directors must have known of the fraud because of (1) the risks inherent in repo financing, which involves financing at a discount, and (2) the apparent success of the program. Yet neither fact raises a reasonable inference that Defendant must have known that the company's senior management was fraudulently inflating bond pricing. Repo financing is not in itself wrongful, nor does the fact that a company engages in repo financing suggest that it is engaging in fraud. And the fact that the program was apparently successful from the board's point of view likewise does not establish that the board must have known that this success was the result of fraud.

In the absence of well-pled facts alleging that Defendant knew or was willfully blind to the Criminal Insider's inflation of bond prices, the Complaint may allege that Defendant understood the mechanics of the investment program consistent with his duty of care, but it does not raise a reasonable inference that Defendant knew that the Criminal Insiders were

implementing the program based on secret manipulation of bond pricing.  Such thinly-pled and hindsight-driven claims are insufficient to survive a motion to dismiss.  *Chen v. Howard-Anderson*, 87 A.3d 648, 665 (Del. Ch. 2014) ("Fiduciary decisions are not judged by hindsight.").

Further, Plaintiff's conclusory assessment is undercut by the well-pled facts in the Complaint.  Plaintiff concedes that "the board received regular updates from the Criminal Insiders touting the performance of the bond portfolio."  Complaint, ¶ 99.  Specifically, through a December 2015 Management Report, "the Criminal Insiders told the Directors that the market value of the bond portfolio had jumped from approximately $50 million in August 2015 to $218 million by December 2015."  *Id.*  Plaintiff further concedes that "the May 2016 Management Report to the board showed the same trends as the apparent market value of the portfolio had grown to $350 million."  *Id.* at ¶ 100.  These reports, which Plaintiff has incorporated into his Complaint,[3] show positive trends in Stockholders' Equity and Total Assets over Total Liabilities from December 2015 to May 2016.  *See* Exhibit A, p. 5; Exhibit B, p. 5.

Defendant and the other directors were entitled to rely in good faith on the accuracy of the materials provided to them by Hild, Rohr, and Stumberger – officers and employees of Live Well Financial.  8 *Del. C.* § 141(e).  The reports cited above clearly show the strong performance of the bond portfolio and the solvency of Live Well.  Plaintiff has offered nothing, except the conclusory assessment that Defendant and the others directors must have known of the fraud, to suggest their reliance on these reports was unreasonable.  Accordingly, Plaintiff has failed to state a claim for relief with respect to Defendant's role with the bond investment program.

---

[3] "[A] court may consider the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and some matters judicially noticed.  In the Third Circuit, a court may consider 'concededly authentic document[s] upon which the complaint is based when the defendant attaches such a document to its motion to dismiss.'"  *In re Foothills Tex., Inc.*, 476 B.R. 143, 150-51 (Bankr. D. Del. 2012) (quoting *Pension Ben. Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

### ii. *Actions related to approval of the stock repurchase*

Plaintiff next argues that Defendant breached the duty of loyalty through his role in approving Live Well's repurchase of certain of its stock from the Preferred Stockholders. Complaint, ¶¶ 144, 149.  In support of this allegation, Plaintiff suggests that Defendant was financially interested in the transaction and that he lacked independence from Hild.  The well-pled facts of the Complaint do not establish either assertion.

Plaintiff strains to identify a disabling interest held by Defendant in the stock repurchase transaction.  To start, it is clear that Defendant did not stand on both sides of the stock repurchase agreement.  In spite of Plaintiff's conclusory assertion to the contrary, *see id.* at ¶ 149, Plaintiff identifies with particularity the Preferred Stockholders receiving payment as part of the stock repurchase agreement, and Defendant is <u>not</u> included.  *See Id.* at ¶ 142.  Defendant was a party to the agreement solely in his capacity as a director of Live Well charged with approving the agreement.  *Id.* at ¶ 142.  Accordingly, because Defendant was not on both sides of the stock repurchase agreement, Plaintiff must allege that Defendant received a material benefit not shared generally by all stockholders.  *See Orman*, 794 A.2d at 23 (noting that "in the absence of self-dealing" the plaintiff must have a benefit that is "*material* to that director").

Plaintiff fails to identify a benefit that Defendant received from the transaction that was subjectively material to him.  The only "benefit" that Plaintiff ties to the transaction are the director fees.  Yet, the Complaint makes clear that these fees were approved months after the stock repurchase agreement closed.  Further, Plaintiff concedes that directorial compensation had been discussed for years, that there was consensus that outside directors – like Defendant – should receive compensation, and that the issue being considered was whether such compensation should extend to inside directors.  Complaint, ¶ 150.  As a general matter, the

11

receipt of director's fees ordinarily will not be a disabling interest unless the fees are shown to "exceed materially what is commonly understood and accepted to be a usual and customary director's fee." *Orman*, 794 A.2d at 29 n.62. Defendant served as a director of Live Well from 2005 to 2019 and received $1,388,975 for the entirety of his service. Plaintiff pleads no specific facts suggesting that these fees materially deviate from customary director's fees, and Plaintiff's bare conclusory assertion that they do does not meet the pleading burden under *Iqbal*.

Moreover, Plaintiff has failed to allege that the director's fees received by Defendant were material to him. Importantly, "[m]ateriality means that the alleged benefit was significant enough '*in the context of the director's economic circumstances*, as to have made it improbable that the director could perform [his] fiduciary duties to the . . . shareholders without being influenced by [his] overriding personal interest.'" *Orman*, 794 A.2d at 23. Beyond alleging the monetary value of the payments received by Defendant for the many years that he served on Live Well's board of directors, Plaintiff has failed to allege, even in conclusory fashion, that these fees were material to Defendant specifically. Plaintiff therefore has not established that Defendant had an interest in the stock repurchase by virtue of the director fees. *See RCS Creditor Tr. v. Schorsch*, No. CV 2017-0178-SG, 2017 Del. Ch. LEXIS 820, at *42 (Ch. Nov. 30, 2017) ("The Complaint lacks . . . specific allegations about the Control Defendants' economic circumstances, though the Complaint does say that these individuals are 'immensely wealthy.' Without more concrete information about the Control Defendants' financial circumstances, I cannot determine whether the benefits they purportedly received from the challenged decisions were so important to them that their impartiality was compromised." (citations omitted)).

Plaintiff likewise fails to establish that Defendant lacked independence in the decision to approve the stock repurchase. Plaintiff relies on Hild's use of TitleWorks and Defendant's

position as President of TitleWorks in an attempt to establish that Defendant's loyalties were divided between Hild and Live Well.  However, allegations of a business relationship, even a longstanding relationship, without more are insufficient to establish a lack of independence. *Orman*, 794 A.2d at 26–28; *see also Kanter v. Barella*, 489 F.3d 170, 179–80 (3d Cir. 2007) (noting the allegation that an outside director, whose law firm served as outside counsel to the company, was beholden to the company's largest shareholder to maintain the business relationship was too "attenuated" to establish a lack of independence).

Instead, a plaintiff must allege that the benefit received by the director is of "such subjective material importance" that the potential loss calls into question the director's independence.  *Telxon Corp.*, 802 A.2d at 264.  Here, Plaintiff does not provide the Court with factual allegations necessary to assess materiality.  Plaintiff alleges that TitleWorks received $6.6 million from Hild over the course of a three-year period.  Complaint, ¶ 154, Exhibit B.  Plaintiff concedes, however, that TitleWorks is a "title company" and these funds represent "pass[] through" payments related to real estate transactions between Hild and third-parties.  *Id.* at ¶ 154. Absent from the Complaint is any well-pled factual allegation regarding the value of these transactions to Defendant, or even TitleWorks.  For example, Plaintiff does not allege the amount of fees charged by TitleWorks for performing its services, or the value of those fees to Defendant.  Because the existence of a business relationship without more is not enough to show a lack of independence, Plaintiff has failed to adequately plead the TitleWorks' business as a basis for questioning Defendant's independence.  *See Off. Comm. of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins*, No. CV 20228-NC, 2004 Del. Ch. LEXIS 122, at *40– 41 (Ch. Aug. 24, 2004) ("The Complaint . . . makes no allegations as to the amount of fees the law firm obtained from [the company], and whether those fees constituted such a large part of

the firm's income so as to be material to either the firm or [the director]. Simply because [the director] is the founding partner of a law firm which provided legal services to [the company], without more, is not enough to establish [the director] was 'beholden to'" the company's president.).

### iii.    Actions related to approval of Hild's compensation

Plaintiff also points to the approval of Hild's compensation as a breach of Defendant's duty of loyalty.  To support this breach, Plaintiff relies on allegations related to Defendant's independence because of TitleWorks' relationship with Hild and Defendant's interest in receiving director fees.  These allegations fail here for the same reasons as they do above.

Additionally, Plaintiff also identifies a handful of Defendant's actions that purport to show Hild's control of Defendant.  For example, Plaintiff often invokes Defendant's "track record" of supporting Hild's position with respect to guarantee fees.  Complaint, ¶ 155; *see also id.* at ¶¶ 157, 164.  Yet, even if true, a director's support and approval of an officer's compensation does not raise an inference that the director lacked independence from that officer. *See Elkins*, No. 20228-NC, 2004 Del. Ch. LEXIS 122, at *39 (Ch. Aug. 24, 2004) ("Approving of or acquiescing in the challenged transactions, without more, [is] insufficient to raise a reasonable doubt of a director's ability to exercise independent business judgment.").  Because the mere fact that a director supports an officer's proposal does not, without more, raise a reasonable inference that the director lacked independent business judgment, this allegation and others like it do not – individually or collectively – raise a reasonable inference that Defendant lacked independence.

Thus, the Court should dismiss Count 2 of the Complaint because Plaintiff's allegations fail to satisfy the legal standard for a claim of breach of fiduciary duty.  Further, even if the

Court holds that Plaintiff does state such a claim, the Court should nevertheless dismiss Count 2 of the Complaint because certain of Plaintiff's allegations in the Complaint are barred by statute of limitations, as explained below.

2.    Plaintiff's Allegations in the Complaint Are Barred by Statute of Limitations.

Plaintiff alleges that Defendant breached his fiduciary duties, in part, based on his role in approving the company's bond investment program.   Importantly, however, the Complaint makes clear that Board approval of the bond investment program occurred in 2014 and 2015 – outside of the applicable statute of limitations.   Plaintiff further provides no substantive allegations of the Board's action or inaction related to the bond investment program after that time period.   Plaintiff has also failed to plead sufficient facts to demonstrate that the limitation period should be tolled.   Therefore, any allegations of breach related to the bond investment program are time-barred.

Delaware has a three-year statute of limitations for breach of fiduciary duty claims.   *In re AMC Invs., LLC*, 524 B.R. 62, 80 (Bankr. D. Del. 2015) (citing 10 *Del. C.* § 8106).   A claim for fiduciary breach accrues, and the three-year limitations period begins to run, "at the time of the wrongful act . . . 'even if the plaintiff is ignorant of the cause of action.'"   *Bridgeport Holdings*, 388 B.R. at 561 (quoting *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004)).   Moreover, "[w]here a plaintiff brings a claim based upon multiple allegedly wrongful acts, a court considers each act in turn in applying the statute of limitations."   *Id.* at 562 (citing *Albert v. Alex. Brown Mgmt. Servs.*, No. CV.A. 762-N, 2005 Del. Ch. LEXIS 100 (Ch. June 29, 2005)).

Fiduciary breach claims can be subject to the equitable tolling doctrine.   *ECB USA, Inc. v. Savencia, S.A.*, No. CV 19-731-RGA-CJB, 2020 U.S. Dist. LEXIS 163079, at *41–42 (D. Del.

July 10, 2020).   However, "[a]t the motion to dismiss stage, a plaintiff must plead the applicability of the doctrine and must do so by alleging: (1) a fiduciary relationship; (2) actionable or fraudulent self-dealing; and (3) lack of inquiry notice." *Id.*

In this case, the wrongful acts alleged by Plaintiff must have occurred on or after June 10, 2016, to be actionable.  *See* 11 U.S.C. § 108(a).  However, the Complaint is clear that approval of the bond investment program occurred well before June 10, 2016.  Plaintiff specifically alleges that "in or around November 2014, and with board approval, Live Well began its bond trading business."  Complaint, ¶ 65.  Further, Plaintiff alleges that the directors, including Defendant, encouraged Live Well's officers to increase the size of the bond portfolio at a board meeting in November 2015.  *Id.* at ¶¶ 87–90.  Beyond these allegations, Plaintiff offers no well-pled allegations that the directors, including Defendant, took or failed to take any action with respect to the bond investment program on or after June 10, 2016.

Plaintiff has likewise failed to plead the applicability of the equitable tolling doctrine.  As discussed in more detail above, the Complaint does not include any allegations of self-dealing by Defendant with respect to the bond investment program.  The sole benefit to the directors that is alleged is the increase in stockholder equity, *see* Complaint, ¶ 110, which is a benefit shared by all stockholders in the Company.  *Cede & Co.*, 634 A.2d at 362 ("Classic examples of director self-interest in a business transaction involve either a director appearing on both sides of a transaction or a director receiving a personal benefit from a transaction *not received by the shareholders generally*." (emphasis added)).

For these reasons, Plaintiff's allegations related to the bond investment program are time-barred and do not support an action for fiduciary breach.

**B.      The Court Should Dismiss Count 3 of the Complaint Because Plaintiff Fails to State a Claim for Unlawful Stock Repurchase under 8 *Del. C.* § 174 Against Defendant.**

Count 3 of the Complaint is governed by 8 *Del. C.* § 174, which allows a cause of action against directors for "wilful or negligent" violation of 8 *Del. C.* § 160, which details the powers of a corporation to purchase its own stock. *See* 8 *Del. C.* § 174(a). In relevant part, 8 *Del. C.* § 160 provides that "no corporation shall . . . [p]urchase or redeem its own shares of capital stock for cash or other property when the capital of the corporation is impaired or when such purchase or redemption would cause any impairment of the capital of the corporation." 8 *Del. C.* § 160(a)(1). Therefore, to establish a claim under § 174 for a violation of § 160, a plaintiff must allege that the company's capital: (1) was, or would become, impaired at the time of the stock purchase; and (2) that the director knew, or was negligent in not knowing, of this fact. 8 *Del. C.* §§ 174(a), 160(a)(1).

Under § 160, a company's purchase of its own stock "impairs capital if the funds used in the repurchase exceed the amount of the corporation's 'surplus,' defined by 8 *Del. C.* § 154 to mean the excess of net assets over the par value of the corporation's issued stock." *SV Inv. Partners, LLC v. ThoughtWorks, Inc.*, 7 A.3d 973, 982 (Del. Ch. 2010) (quoting *Klang v. Smith's Food & Drug Ctrs., Inc.*, 702 A.2d 150, 153 (Del. 1997)). "[T]he test for whether a corporation 'has no surplus' and whether 'its capital is impaired' is equivalent to the balance sheet insolvency test." *In re Trib. Co. Fraudulent Conv. Litig.*, No. 11-MD-2296 (RJS), 2018 U.S. Dist. LEXIS 204632, at *38 (S.D.N.Y. Nov. 30, 2018) (citing *SV Inv. Partners*, 7 A.3d at 982); *see also Quadrant Structured Prods. Co., LTD. v. Vertin*, 115 A.3d 535, 561 (Del. Ch. 2015) ("The operation of the traditional balance sheet test also parallels the statutory standard for determining whether a Delaware corporation has a cause of action against its directors for declaring an improper dividend or improperly repurchasing stock.").

As explained below, Plaintiff has failed to plead facts sufficient to establish both the impairment of Live Well's capital at the time of the stock repurchase and Defendant's awareness of such impairment.

    1.    <u>Plaintiff Has Failed to Allege Facts Sufficient to Establish Live Well's Alleged Insolvency at the Time of the Stock Repurchase</u>.

As explained in Section C infra, in order for Plaintiff to fulfill his burden to state a claim regarding insolvency, Plaintiff must allege facts sufficient to enable the Court to infer that "the sum of [Live Well's] debts is greater than all of such entity's property, at fair valuation … at the time of" stock repurchase. *Jalbert v. Souza (In re F-Squared Inv. Mgmt., LLC)*, 2019 Bankr. LEXIS 2817, *43 (Bankr. D. Del. 2019). In this case, not only has Plaintiff failed to allege any facts regarding Live Well's alleged insolvency at the time of the stock repurchase, Plaintiff's only well-pled factual allegations tend to establish solvency at the time of the stock repurchase. *See* Complaint, ¶ 5 ("reported equity value from approximately $53 million in 2015 to over $108 million by September 2016"); *id*. at ¶ 46 ("Live Well's assets from its core mortgage origination and servicing businesses comfortably exceeded its liabilities from those businesses … [by] over $100 million as of year-end 2018"). Finally, Plaintiff's conclusory assertion that such figures do not reflect the "true" financial condition of Live Well and related assertions such as in paragraph 106 of the Complaint that "the deficiency far outstripped the value of all Live Well's legitimate assets and business operations by a significant margin, rendering the company insolvent" are not well-pled factual allegations and provide the Court with no guidance regarding Live Well's financial status generally at the time of the stock repurchase. And, they provide no basis to infer that at the time of redemption the losses on those bonds were sufficient to wipe out the company's balance sheet because Plaintiff does not allege the actual value of the bonds or the

value of Live Well's other assets.  Thus, Plaintiff has failed to allege facts sufficient to establish Live Well's insolvency at the time of the stock repurchase.

      2.    <u>Plaintiff Has Failed to Allege Facts Sufficient to Establish Defendant's Alleged Awareness of Any Impairment</u>.

Similarly, Plaintiff has failed to allege facts sufficient to establish Defendant's alleged awareness of any impairment.  Plaintiff asserts that the directors "knew, should have known, or were willfully blind in not knowing" that Live Well was insolvent at the time of the stock repurchase due to the fraud being perpetrated by the company's management.  *See* Complaint, ¶ 143.  However, Plaintiff provides no well-pled factual allegations to support this conclusory assertion.  Instead, with the benefit of hindsight, Plaintiff provides generic statements as to Defendant's financial background and his awareness of the bond investment program to argue that he must have known of the crimes being committed by management.  These "naked assertions devoid of further factual enhancement" fall short of the facts needed to state a claim for relief.  *In re LSC Wind Down, LLC*, 610 B.R. 779, 783 (Bankr. D. Del. 2020) (quoting *Iqbal*, 556 U.S. at 678).

Further, the well-pled factual allegations in the Complaint directly contradict the conclusory assertion that Defendant knew or was negligent as to Live Well's insolvency.  Plaintiff concedes that "the board received regular updates from the Criminal Insiders touting the performance of the bond portfolio."  Complaint, ¶ 99.  Specifically, through a December 2015 Management Report, "the Criminal Insiders told the Directors that the market value of the bond portfolio had jumped from approximately $50 million in August 2015 to $218 million by December 2015."  *Id*.  Plaintiff further concedes that "the May 2016 Management Report to the board showed the same trends as the apparent market value of the portfolio had grown to $350 million."  *Id.* at ¶ 100.  Further, the reports received by the directors clearly indicate that Live

Well was solvent at the time of the stock repurchase.  Stockholders' Equity increased from $73,498,714 in December 2015, to $99,835,778 in May 2016, and then to $110,251,190 in August 2016.  Exhibit A, p. 5; Exhibit B, p. 4, Exhibit C, p. 5.  In September 2016 – after the execution of the stock repurchase agreement – Stockholders' Equity remained well above water at $90,027,849.  Exhibit C, p. 5.

Defendant was entitled to rely in good faith on the reports of the bond portfolio's performance prepared by Live Well's management.  A director accused of violating § 174 shall be "fully protected if he reasonably relied in good faith upon opinions, reports, and statements presented to the corporation by professionals and experts."  *U.S. Bank Nat'l Ass'n v. Verizon Commc'ns Inc.*, 892 F. Supp. 2d 805, 822 (N.D. Tex. 2012) (citing 8 *Del. C.* § 172).  The reports that Plaintiff relies on in the Complaint unquestionably show that Live Well's assets far exceeded its liabilities.  Yet, in the face of these positive statements about the bond investment portfolio's performance and reports as to Live Well's solvency, Plaintiff offers no reason why Defendant and the other directors were not entitled to rely in good faith on the accuracy of the materials provided by Hild, Rohr, and Stumberger – officers and employees of Live Well.  *See* 8 *Del. C.* § 172; *see also* § III.b.1 supra (Complaint fails to plead plausible basis to infer that directors knew of underlying bond price manipulation as opposed to mechanics and apparent success of the bond program).

A recent Delaware Chancery Court case, *In re GoPro, Inc.*, is instructive.  2020 Del. Ch. LEXIS 165 (Ch. Apr. 28, 2020).  In *In re GoPro*, the plaintiffs sought to establish that the directors were likely liable for fiduciary breach based on their alleged knowledge that management made inaccurate public statements regarding revenue projections.  The court rejected this conclusory allegation relying, in part, on a production forecast presented to the

board by management that was incorporated into the complaint by reference.  The court noted that the production forecast contradicted plaintiff's assertion regarding the board's knowledge of inaccurate revenue projects.  The court then stated that, "[c]onsidering the *presumption* of directorial good faith, as well as the Board's statutory right to rely on management's reports," the [production forecast] renders unreasonable any inference the Board was aware that the revenue statements were inaccurate. *Id.* at *30.

Here, like in *In re GoPro*, Defendant was entitled to rely on the materials presented to the board by management.  Plaintiff offers no well-pled factual allegations that provide a reason to infer that Defendant should have rejected as unreliable these materials presented by Live Well's officers.  Plaintiff's naked assertion that Defendant "knew, should have known, or were willfully blind in not knowing" of the fraud and Live Well's insolvency, is clearly overcome by the well-pled facts of the Complaint and the materials incorporated by reference therein which Defendant was entitled to rely upon.  Plaintiff has therefore failed to sufficiently plead a "wilful or negligent" violation of § 160 as required by § 174(a).

Thus, the Court should dismiss Count 3 of the Complaint because Plaintiff fails to state a claim against Defendant for unlawful stock repurchase under 8 *Del. C.* § 174.

**C.    The Court Should Dismiss Count 7 of the Complaint Because Plaintiff Fails to State a Claim for the Avoidance and Recovery of Constructive Fraudulent Transfers Against Defendant.**

In Count 7 of the Complaint, Plaintiff seeks to avoid and recover eleven alleged transfers from Live Well to Defendant during the period from 2016 through 2019 (individually, a "Director Fee" and collectively, the "Director Fees") as constructive fraudulent transfers pursuant to 11 U.S.C. § 544 as well as Delaware and Virginia law.  However, in order to establish a constructive fraudulent transfer claim, Plaintiff must allege facts sufficient to

establish that a debtor made a transfer without receiving the required value in exchange for each Director Fee and that such debtor satisfied certain financial conditions at the time of such Director Fee. *See* 6 *Del. C.* § 1304 ("without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor… [was engaged] in a business or a transaction for which the remaining assets of the debtor were unreasonably small … [or] intended to incur … debts beyond the debtor's ability to pay as they became due."); *see also* Va. Code Ann. § 55.1-401 ("Every gift, conveyance, assignment, transfer, or charge that is not upon consideration deemed valuable in law … by an insolvent transferor or by a transferor who is thereby rendered insolvent, shall be void …"). As explained below, the Court should dismiss Count 7 both because Plaintiff has failed to allege facts sufficient to establish that Live Well received the required lack of value in exchange for each Director Fee and because Plaintiff has failed to allege facts sufficient to establish Live Well's financial condition at the time of each Director Fee.

1. Plaintiff Has Failed to Allege Facts Sufficient to Establish that Live Well Received the Required Lack of Value in Exchange for each Director Fee.

In *Jalbert v. Flanagan (In re F-Squared Inv. Mgmt., LLC)*, 600 B.R. 294 (Bankr. D. Del. 2019), this Court dismissed a complaint asserting constructive fraudulent transfer claims because the plaintiff failed to establish that the debtor received the required lack of value in exchange for such transfer. *Flanagan*, 600 B.R., at 304. The Court began by summarizing Third Circuit caselaw as follows:

> The Third Circuit dispels any notion that a debtor must receive a direct tangible economic benefit to receive "value" . . . and recognizes cases decided by sister circuits concluding that gambling losses, charitable contributions, and money spent in a failed attempt to keep a business afloat can confer value. The Third Circuit also makes clear that a finding of "value" is not a high bar; even a slight chance that a benefit (tangible or intangible) might be conferred upon a debtor is sufficient to show that *some* value has been conferred.

22

*Id.* at 304; *see also In re Meyer*, 244 F.3d 352, 355 (4th Cir. 2001) (reversing lower court's judgment of voluntary conveyance under Virginia law because Virginia law "simply requires that a transfer or conveyance be 'upon consideration deemed valuable in law.'  This phrase refers to 'any valuable consideration received by the transferor.'") (citing *C-T of Virginia, Inc. v. Euroshoe Assoc. Ltd. P'ship*, No.91-1578, 1992 U.S. App. LEXIS 1029, *4 (4th Cir. Jan. 29, 1992) (affirming lower court's dismissal of a voluntary conveyance claim under the predecessor to Va. Code Ann. § 55.1-401 by adopting the "peppercorn" approach to determine whether plaintiff had "received anything which can be determined to be consideration deemed valuable in law.").

In this case, not only is Plaintiff's conclusory assertion in paragraph 247 of the Complaint that "Live Well received no consideration in exchange for the [Director Fees]" not supported by any well-pled actual allegations, it is contradicted by them, because they show that Defendant in fact provided services to the board and various committees in exchange for the Director Fees he received.  *See, e.g.*, Complaint, ¶ 25 (alleging that Defendant "served as an outside director on Live Well's board of directors from in or about 2005 until July 1, 2019.").  Plaintiff does not plead any facts showing that Defendant did not provide directorial services to Live Well in exchange for these fees, in other words, that Live Well failed to receive "value" in the form of directorial services.  Likewise, Plaintiff does not plead *facts* showing that the value received by Live Well (directorial services) was inequivalent to the fees that Live Well paid.  Rather, Plaintiff concedes that Defendant served as an outside director of Live Well for 15 years, and does not allege that the director fees paid to Defendant were excessive or above-market for a company of the size and type of Live Well.  Thus, Plaintiff has failed to allege facts sufficient to establish that Live Well received the required lack of value in exchange for each Director Fee.

2.      Plaintiff Has Failed to Allege Facts Sufficient to Establish Live Well's Financial Condition at the Time of Each Director Fee.

*In Jalbert v. Souza (In re F-Squared Inv. Mgmt., LLC)*, 2019 Bankr. LEXIS 2817 (Bankr. D. Del. 2019), this Court granted a motion to dismiss a complaint asserting constructive fraudulent transfer claims under the Bankruptcy Code, as well as Massachusetts and Delaware law, that failed to allege facts sufficient to establish the debtor's required financial condition at the time of the transfer.  The Court defined insolvency as "the financial condition such that the sum of such entity's debts is greater than all of such entity's property, at fair valuation … at the time of conveyance."  *Souza*, 2019 Bankr. LEXIS 2817, *43. The Court also distinguished undercapitalization from insolvency by defining "unreasonably small capital" as "an inability to generate sufficient profits to sustain operations at the time of or because of the challenged transfer or, in other words, where a debtor is technically solvent but doomed to fail."  *Id.* at *61-63 (internal citations omitted).   Finally, this Court defined the concept of "debts beyond the debtor's ability to pay as they became due" as "circumstances showing that the debtor could not reasonably believe that it would be able to repay subsequent debts."  *Id.* at *67.

In *Souza*, the plaintiff alleged that the debtor "had enormous unliquidated liabilities at all relevant times … was charged with and admitted to securities fraud … paid $35 million to the SEC … and because many of them were facing their own SEC investigations and penalties for false advertising, [the debtor's] clients fled."  *Id*. at *45.[4]  However, this Court ruled that such allegations were insufficient to allege insolvency because the allegations could not enable the Court to draw "reasonable inferences as to assets or the magnitude of liabilities relative to assets from the facts alleged in the Complaints."  *Id*. at *59; *see also Yelverton v. Homes at Potomac*

---

[4] In *Souza*, this Court also ruled that plaintiff could not satisfy his pleading standard merely by analogizing the transfers to a Ponzi scheme because "[a] Ponzi scheme presents a very specific scenario: guaranteed returns to existing investors can only be paid with funds from new investors."  *Id*.  As in *Souza*, Plaintiff's reference to a Ponzi scheme in paragraph 169 of the Complaint is insufficient to discharge Plaintiff from his pleading obligations under the Federal Rules of Civil Procedure.

*Greens Assocs. Ltd. P'ship (In re Yelverton)*, No. 09-00414, 2010 Bankr. LEXIS 1339, at *14–15 (Bankr. D.D.C. Apr. 21, 2010) (dismissing complaint to avoid alleged constructively fraudulent transfer pursuant to 11 U.S.C. § 544 and Virginia law due to plaintiff's failure to allege specific facts showing the required element of insolvency on the date of the alleged transfer).

In this case, not only has Plaintiff alleged far less than the failed attempt in *Souza*, but Plaintiff's only well-pled factual allegations tend to establish solvency at the time of the Director Fees. *See* Complaint ¶ 5 ("reported equity value from approximately $53 million in 2015 to over $108 million by September 2016"); *id.* at ¶ 46 ("Live Well's assets from its core mortgage origination and servicing businesses comfortably exceeded its liabilities from those businesses … [by] over $100 million as of year-end 2018"). Finally, Plaintiff's conclusory assertion that such figures do not reflect the "true" financial condition of Live Well are not well-pled factual allegations and provide the Court with no guidance regarding Live Well's financial status at the time of the Director Fees. Thus, Plaintiff has failed to allege facts sufficient to establish Live Well's financial condition at the time of each Director Fee.

Because Plaintiff has failed to allege facts sufficient to establish that Live Well received the required lack of value in exchange for each Director Fee and because Plaintiff has also failed to allege facts sufficient to establish Live Well's financial condition in connection with each Director Fee, the Court should dismiss Count 7 of the Complaint.

**D.     The Court Should Dismiss Count 8 of the Complaint Because Plaintiff Fails to State a Claim for the Avoidance and Recovery of Intentionally Fraudulent Transfers Against Defendant.**

In Count 8 of the Complaint, Plaintiff claims that each and every payment of Director Fees was an "intentionally fraudulent" transfer pursuant to 11 U.S.C. § 544 as well as Delaware

and Virginia law.  However, Plaintiff not only fails to plead the claim with specificity as required

by Federal Rule of Civil Procedure 9(b), Plaintiff also fails to allege facts sufficient to establish

the statutory standard.  *See* 6 *Del. C.* § 1304 ("A transfer made or obligation incurred by a debtor

is fraudulent as to a creditor …if the debtor made the transfer or incurred the obligation … [w]ith

actual intent to hinder, delay or defraud any creditor of the debtor."; *see also* Va. Code Ann. §

55.1-400 (Every "conveyance … given with intent to delay, hinder, or defraud creditors …

[shall] be void.").

In order to establish that Live Well made each such transfer with the actual intent to

hinder, delay, or defraud creditors, Plaintiff must allege facts sufficient to establish "badges of

fraud" under each statute.  For example, 6 *Del. C.* § 1304(b) provides that in determining actual

intent, consideration may be given, among other factors, to whether:

> (1) The transfer or obligation was to an insider; (2) The debtor retained possession
> or control of the property transferred after the transfer; (3) The transfer or
> obligation was disclosed or concealed; (4) Before the transfer was made or
> obligation was incurred, the debtor had been sued or threatened with suit; (5) The
> transfer was of substantially all the debtor's assets; (6) The debtor absconded; (7)
> The debtor removed or concealed assets; (8) The value of the consideration
> received by the debtor was reasonably equivalent to the value of the asset
> transferred or the amount of the obligation incurred; (9) The debtor was insolvent
> or became insolvent shortly after the transfer was made or the obligation was
> incurred; (10) The transfer occurred shortly before or shortly after a substantial
> debt was incurred; and (11) The debtor transferred the essential assets of the
> business to a lienor who transferred the assets to an insider of the debtor.

6 *Del. C.* § 1304.

In this case, Plaintiff has failed to allege facts sufficient to establish the actual intent to

hinder, delay, or defraud creditors under this standard.  Plaintiff does not dispute that Defendant

provided directorial services in exchange for Director Fees, and does not offer any well-pled

basis to infer that the fees were above-market.  Nor does Plaintiff plead badges of fraud from

which the court may infer intent.  For example, although Plaintiff alleged that Defendant was an

outside director of Live Well, this Court has already dismissed an intentional fraudulent transfer claim that alleges nothing other than the payment of fees to insiders. *Miller v. Bradley* (*In re W.J. Bradley Mortgage Capital, LLC*), 598 B.R. 150, 165 (Bankr. D. Del. 2019) (granting motion to dismiss fraudulent transfer claim against insiders).   Further, Plaintiff has not made well-pled factual allegations establishing that Live Well: (a) retained possession of the funds comprising the Director Fees; (b) concealed the transfers comprising the Director Fees; (c) was sued or threatened with suit at the time of the Director Fees; (d) transferred all assets in connection with the Director Fees; (e) absconded after the Director Fees; or (f) removed or concealed assets after the Director Fees.   Additionally, while Plaintiff states the conclusory assertions that Live Well failed to receive value in exchange for each Director Fee and was insolvent at the time of each Director Fee, those bare conclusions are not supported by sufficient factual allegations that would permit the Court to draw such inferences as explained herein.   Finally, Plaintiff has not made well-pled factual allegations establishing that the Director Fees occurred shortly before or after the incurrence of a substantial debt or involve the transfer of assets to a lienor.   Thus, Plaintiff has failed to allege that Live Well transferred the Director Fees with the actual intent to hinder, delay, or defraud creditors under Delaware law.

Similarly, Virginia law recognizes the following "badges" of fraud:

> (1) retention of an interest in the transferred property by the transferor, (2) transfer between family members for allegedly antecedent debt, (3) pursuit of the transferor or threat of litigation by his creditors at the time of the transfer, (4) lack of or gross inadequacy of consideration for the conveyance, (5) retention or possession of the property by transferor, and (6) fraudulent incurrence of indebtedness after the conveyance.

*Fox Rest Assocs., L.P. v. Little*, 282 Va. 277, 285, 717 S.E.2d 126 (2011).

Once again, Plaintiff has failed to allege facts sufficient to establish the actual intent to hinder, delay, or defraud creditors under this standard.   For example, Plaintiff has not alleged

that Live Well retained an interest in the Director Fees.  Further, although Plaintiff has alleged that Defendant was an outside director of Live Well, the Supreme Court of Virginia has cautioned against a finding that a relationship between the parties is sufficient to establish a fraudulent transfer claim under Virginia law:

> The relationship of the parties does not, of and in itself, cast suspicion upon the transaction, or create such a prima facie presumption against its validity as would require the court to hold it to be invalid without proof that there was fraud on the part of the grantor, participated in by the grantee. This proposition is so well settled that authorities need not be cited in its support.

*Grayson v. Westwood Bldgs. L.P.,* 859 S.E.2d 651, 674 (Va. 2021) (*citing Gottlieb v. Thatcher,* 151 U.S. 271, 279 (1894)).

Additionally, Plaintiff does not allege that Live Well was under threat of litigation at the time of the Director Fees.  Further, while Plaintiff states the conclusory assertion that Live Well failed to receive value in exchange for each Director Fee, that bare conclusion is not supported by sufficient factual allegations that would permit the Court to draw such an inference as explained herein.  Finally, Plaintiff does not allege that Live Well retained the Director Fees after transfer, and Plaintiff's bare conclusion that Live Well incurred indebtedness after the Director Fees is not supported by sufficient factual allegations that would permit the Court to draw such inference here.  Thus, Plaintiff has failed to allege that Live Well transferred the Director Fees with the actual intent to hinder, delay, or defraud creditors under Virginia law.

Because Plaintiff has failed to allege facts sufficient to establish a claim for intentional fraudulent transfers under either Delaware or Virginia law, the Court should dismiss Count 8 of the Complaint.

IV.    <u>**CONCLUSION**</u>

For the above-referenced reasons, Defendant respectfully requests that this Court enter an

order dismissing all counts in the Complaint against Defendant with prejudice.

Dated: September 9, 2021
Wilmington, Delaware

*/s/ Robert J. Stearn, Jr.*
Robert J. Stearn, Jr. (No. 2915)
Cory D. Kandestin (No. 5025)
J. Zachary Noble (No. 6689)
**RICHARDS, LAYTON & FINGER, P.A.**
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
stearn@rlf.com
kandestin@rlf.com
noble@rlf.com

-and-

Dion W. Hayes (*pro hac vice* to be filed)
Joseph S. Sheerin (*pro hac vice* to be filed)
**McGUIREWOODS LLP**
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
Telephone: (804) 775-1000
dhayes@mcguirewoods.com
jsheerin@mcguirewoods.com

*Counsel to Stuart H. Cantor*